## THE OBDAM.

### INTERNATIONAL NAV. CO. v. THE OBDAM.

(District Court, D. New Jersey. February 27, 1896.)

SALVAGE COMPENSATION.

Eighteen thousand dollars awarded to a steamship worth, with her freight, $90,000, for towing into Halifax in rough weather a steamer valued, with her cargo, at $384,000, which was found with a broken shaft, some 80 miles from Sable Island, in a condition in which her propeller was liable, in the course of long drifting, to batter the rudder post, and seriously damage the ship.

This was a libel by the International Navigation Company against the steamship Obdam to recover compensation for salvage services.

Robinson, Biddle & Ward, for libelants.
Wing, Putnam & Burlingham, for claimant.

GREEN, District Judge. On Thursday, October 31, 1895, in the forenoon, the steamship Pennland, bound on a voyage from Liverpool to Philadelphia, sighted a steamship to the northwest, apparently in distress. This vessel proved to be the Obdam, from Rotterdam, bound to New York. It appeared that her shaft was broken; that she had but an insignificant sail area, and was drifting as the wind and tide might take her. At her request, the Pennland took her in tow, and though, from stress of weather, she was compelled to abandon her for a time, the towing hawser breaking, she afterwards went to her assistance again, and brought her safely into the harbor at Halifax. This action is to recover for these services. It is stipulated that the Pennland, which is a mail, passenger, and freight steamer, is worth $90,000, and that the Obdam and her cargo were worth $384,000. It is not denied that the service rendered was a salvage service. The only question in dispute concerns the amount to be awarded. It is alleged by the libelant that when taken in tow by the Pennland the Obdam was in very dangerous proximity to Sable Island, notorious for disastrous shipwrecks. It is quite true that shortly before she was taken in tow the Obdam had drifted to within 30 miles of this "Graveyard of the Atlantic." But the wind had veered to the northwest, and just previous to commencement of these salvage services she had drifted away from this locality, and seemed to be in no immediate danger, at least from this source. It is also claimed that the breaking of the propeller shaft made it possible for the propeller itself, during a long drift, to batter the rudder post, and so seriously damage the ship. This was undoubtedly an element of danger, and deserves consideration. The distance towed was about 200 miles. The actual time consumed was about $2\frac{1}{2}$ days. The services rendered were every way meritorious, and deserve substantial reward. Perhaps more so on account of the position of the Obdam when help was given her, for it is not disputed that she was some distance north of the usual track of vessels crossing the Atlantic, and in fact, from the time of her accident until she was sighted by the Pennland, she had seen but one vessel, and that a fishing vessel, who had promised to report her at the first opportunity. Salvage awards must of necessity be to some extent arbitrary, and rest in the discretion of the court. Having in view the general principles which underlie such awards, and having respect to the special circumstances of this case, the sum of $18,000 is awarded as a fair salvage.